# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| In re | ) | Chapter 13 |
| | ) | |
| Vinroy W. Reid | ) | Case No. 3:18-bk-31436 |
| | ) | |
| Debtor | ) | |
| | | |
| Spend Management Solutions, LLC | ) | Adversary Proceeding |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| Vinroy W. Reid, VR King Construction, LLC, | ) | |
| VR Investments, LLC and Baranko Enterprises, | ) | |
| LLC, and Y2 Yoga, Cotswold, LLC. | ) | |
| | ) | |
| Debtor | ) | |

### SPEND MANAGEMENT SOLUTIONS, LLC'S REQUEST FOR INJUNCTION AND TO EXTEND STAY TO NONDEBTOR CODEFENDANT

COMES NOW Spend Management Solutions, LLC ("Spend Management Solutions"), non-debtor codefendant in a matter currently pending before the Mecklenburg County Superior Court, captioned *Y2 Yoga Cotswold, LLC v. Vinroy W. Reid, VR King Construction, LLC, VR Investments, LLC, Baranko Enterprises, Inc., and Spend Management Solutions*, Case no. 16-CVS-23179 (hereinafter the "Underlying Action"), involving the above-referenced debtor, Vinroy W. Reid, and moves, pursuant to 11 USCS § 105, 11 USCS § 362(a), 28 U.S.C. § 1334, and USCS Bankruptcy R 7001(7) for an injunction staying the Underlying Action and for an Order extending the stay of the Underlying Action to Spend Management Solutions. In support of its request, Spend Management Solutions shows the Court as follows:

### FACTUAL BACKGROUND

1. Spend Management Solutions is a North Carolina limited liability company with its

principal office located at 212 S. Tryon Street, #1510, Charlotte, Mecklenburg County, North Carolina 28281.

2. Defendant Vinroy Washington Reid ("Mr. Reid") is a resident and citizen of Charlotte, Mecklenburg County, North Carolina.

3. Defendant Y2 Yoga Cotswold, LLC ("Y2 Yoga" or "Plaintiff") is a North Carolina limited liability company doing business in Charlotte, Mecklenburg County, North Carolina at 272 S. Sharon Amity Road, Charlotte, Mecklenburg County, North Carolina, 28211.

4. Defendant VR King Construction, LLC ("VR King Construction") is a North Carolina limited liability company with its principal office located at 9809 E. W.T. Harris Boulevard, Charlotte, Mecklenburg County, North Carolina 28227.

5. Defendant VR Investments, LLC ("VR Investments") is a North Carolina limited liability company with its principal office located at 9809 E. W.T. Harris Boulevard, Charlotte, Mecklenburg County, North Carolina 28227.

6. Defendant Baranko Enterprises, Inc. ("Baranko Enterprises"), is a North Carolina corporation with its principal office located at 9809 E. W.T. Harris Boulevard, Charlotte, Mecklenburg County, North Carolina 28227.

7. Mr. Reid, VR King Construction, VR Investments, Baranko Enterprises, and Spend Management Solutions are defendants in an action filed by Y2 Yoga. The Complaint filed by Y2 Yoga alleges claims against Mr. Reid, VR King Construction, VR Investments, Baranko Enterprises, and Spend Management Solutions for breach of contract, gross negligence, negligent misrepresentation, fraud, breach of fiduciary duty, civil conspiracy, and unfair deceptive trade practices. A copy of the Second Amended

2

Complaint in the Underlying Action is attached at **Exhibit A**.

8. Spend Management Solutions served as Y2 Yoga's business consultant prior to and during the construction of an expanded yoga studio in the Cotswold Shopping Center. The general contractor retained for the project was VR King Construction, and Mr. Reid is the sole owner of VR King Construction. Mr. Reid, VR King Construction, VR Investments, and Baranko Enterprises, are alleged to have breached its contract with Plaintiff and committed gross negligence regarding the work performed. Spend Management Solutions is not a licensed general contractor and did not perform any work on the project. It is also alleged that Mr. Reid, VR King Construction, VR Investments, and Baranko Enterprises converted project funds paid by Plaintiff and made fraudulent transfers of property which are voidable by statute. Plaintiff has alleged that Mr. Reid acted as an alter ego for his corporate entities, including VR King Construction, VR Investments, and Baranko Enterprises, such that the protections afforded principles of limited liability companies and corporations should not be afforded to Mr. Reid. Plaintiff has also asserted direct claims against Spend Management Solutions for breach of contract, negligent misrepresentation, and breach of fiduciary duty.

9. However, Plaintiff has specifically alleged that Mr. Reid, VR King Construction, VR Investments, Baranko Enterprises, *and* Spend Management Solutions acted in concert to commit fraud, civil conspiracy, and unfair deceptive trade practices against Plaintiff in an attempt to harm Plaintiff. Mr. Reid, VR King Construction, VR Investments, Baranko Enterprises, and Spend Management Solutions have denied Plaintiff's allegations. However, as alleged, a finding against any defendant for these causes of action has an adverse impact on the other Defendants such that a finding against one has the effect of

binding the others.

10. Specifically, the issues presented by Plaintiff for the jury to determine include:

> Did Defendant Vinroy W. Reid conspire with Defendants VR King Construction, VR Investments, Baranko Enterprises, Spend Management Solutions, and/or Thais P. Moran and/or Walter H. Rasby, III, or any one of them, to commit fraud, conversion, fraudulent transfers, obtain property under false pretense, or to do other unlawful acts or to do lawful acts in an unlawful way?
> . . .
> Did Defendant Spend Management Solutions conspire with Defendants Vinroy W. Reid, VR King Construction, VR Investments, Baranko Enterprises, and and/or Thais P. Moran and/or Walter H. Rasby, III, or any one of them, to commit fraud, conversion, fraudulent transfers, obtain property under false pretense, or to do other unlawful acts or to do lawful acts in an unlawful way?
> . . .
> Did Defendant Vinroy W. Reid and/or VR King Construction do one of the following: conceal receipt and use of confidential bids from competing contactors; . . . conceal conflicts of interest with Spend Management Solutions; conceal payments to Spend Management Solutions and/or Walter H. Rasby, III;   . . . misappropriate project funds paid by Y2 Yoga . . .?
> . . .
> Did Defendant Spend Management Solutions do one of the following: . . . pretend to act as a project manager for Y2 Yoga in order to secretly assist Defendants Vinroy W. Reid and VR King Construction in misappropriating construction project funds; . . . conceal a conflict with interest with Defendants Vinroy W. Reid and VR King Construction; conceal receipt of payment from Defendant VR King Construction . . .?

Plaintiff's Pre-Trial Disclosures and Issues for the Jury, pp. 7-9, attached at **Exhibit B**.

11. On September 21, 2018, Mr. Reid filed for Chapter 13 bankruptcy.  However, the Underlying Action is still pending, and is currently slated to be tried before a jury. Because of the unusual circumstances presented by the allegations in the Underlying Action and the prejudice to Spend Management Solutions resulting from Mr. Reid's bankruptcy filing, Spend Management Solutions requests an injunction staying the Underlying Action and an Order from this Court extending the automatic stay imposed

by Section 362(a) to Spend Management Solutions.

## **JURISDICTION**

12. The authority to issue an injunction and make a determination regarding the scope of the stay is within the jurisdiction of this Court.

13. Section 105 of the Bankruptcy Code states:

    (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
    . . .
    (c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title [11 USCS §§ 101 et seq.] shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28 [28 USCS §§ 1 et seq.]. . . .

    11 USCS § 105.

14. Courts have held that "[c]ommon sense indicates that, if the Court has subject matter jurisdiction over a proceeding to determine the applicability of the automatic stay, then it has jurisdiction over a related motion for preliminary injunctive relief." FPSDA II, LLC v. Larin (In re FPSDA I, LLC), 2012 Bankr. LEXIS 5928, *17. In addition, "[a] request for relief under 11 U.S.C. § 362(a)(1) to determine that the stay applies to non-debtors and a request for relief under 11 U.S.C. § 105 to extend the stay to non-debtors constitute core proceedings arising under title 11 for which this court has jurisdiction to hear and decide." In re Brier Creek Corporate Ctr. Assocs. Ltd. P'ship, 2013 Bankr. LEXIS 143, *4-5, 2013 WL 144082.

15. Further, the bankruptcy court has "related to" jurisdiction under 28 USCS § 1334.

Section 1334 provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 USCS § 1334(b). "The test for whether a civil proceeding is 'related to' a bankruptcy case 'is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' . . . 'An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate.'" In re Brier Creek Corporate Ctr. Assocs. Ltd., 486 B.R. 681, 686. Therefore, Spend Management Solutions' request for injection and motion to extend the stay is properly before this Court.

**The Stay Should be Extended to Spend Management Solutions Because the Claims Against Mr. Reid and Spend Management Solutions are so Intertwined that a Finding Against Spend Management Solutions Could Cause Harm to the Debtor.**

16. Because the Plaintiff's claims against Mr. Reid in the Underlying Action are so intertwined with the claims against Spend Management Solutions, this Court should exercise its discretion and extend the stay to Spend Management Solutions. Generally, the automatic stay does not apply to nondebtor co-defendants. See A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 ("Subsection (a)(1) is generally said to be available only to the debtor, not third party defendants or co-defendants."). "'There are cases under 362(a)(1) where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants' but, [] in order for relief for such non-bankrupt defendants to be available under (a)(1), there must be 'unusual circumstances' and certainly 'something more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt

6

parties.'" Id. The "unusual situations" are present "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." Id.

17. "[S]ome courts have recognized that in circumstances where the debtor and the non-bankrupt party can be considered one entity or as having a unitary interest, a section 362(a)(1) stay may suspend an action against a non-bankrupt party. . . . In addition, courts have [] extended 11 U.S.C. § 362 to include certain types of actions by or against non-debtors when such actions have a significant impact on the bankrupt." In re North Star Contracting Corp., 125 B.R. 368, 370, 1991 U.S. Dist. LEXIS 7581, *5-6. Specifically, "[c]ourts have extended the stay to bar litigation against non-debtors when an adverse judgment in that litigation may be asserted to collaterally estop debtor in subsequent litigation." Wolf Fin. Group, Inc. v. Hughes Constr. Co. (In re Wolf Fin. Group, Inc.), 1994 Bankr. LEXIS 2350, *19-20 (citing A.H. Robins). "The rationale is that because issues of fact or law determined in the proceeding against the non-debtor could be used against the debtor in a later proceeding, the debtor, notwithstanding the stay, must expend estate assets and the time and energy of its key personnel to monitor and potentially participate in the litigation." Id. Here, the allegations of Plaintiff's complaint, if proven against Spend Management Solutions, could serve to collaterally estop Mr. Reid from making certain arguments regarding the merits of Plaintiff's claims in the bankruptcy action, such that a verdict against Spend Management Solutions has a direct impact on Mr. Reid.

18. As stated above, Plaintiff has alleged that Spend Management Solutions, Mr. Reid, and

7

his companies conspired to commit fraud and other unlawful acts against Plaintiff, and that Spend Management Solutions and Mr. Reid engaged in certain acts arising to unfair and deceptive trade practices. If a verdict is entered against Spend Management Solutions affirming these allegations, Mr. Reid could be collaterally estopped from arguing that these claims have not been proven in the bankruptcy action. As such, an extension of the stay to Spend Management Solutions is proper in this matter.

19. "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." In re Bennett Funding Group, Inc., 1998 Bankr. LEXIS 1938, *76. "Under [] Fourth Circuit law, the requirements of collateral estoppel are [] the following: (1) the issue to be precluded is identical to the issue already litigated; (2) the issue was actually determined in the prior proceeding; (3) the determination of the issue was essential to the decision in the prior proceeding; (4) the prior judgment was final and valid; and (5) the party against whom estoppel is asserted was a party to or in privity with a party in the prior action and had a full and fair opportunity to litigate the issue." Londono-Rivera v. Virginia, 155 F. Supp. 2d 551, 565, 2001 U.S. Dist. LEXIS 7753, *36-37; see also Amatulli & Sons, LLC v. Great N. Ins. Co., 2008 U.S. Dist. LEXIS 1589, *34 (holding that a "litigant invoking collateral estoppel need not have been a party to or in privity with a party in the first lawsuit 'as long as the party to be collaterally estopped had a full and fair opportunity to litigate the issue in the earlier action.'").

20. Here, the issues of fraud, civil conspiracy, and unfair deceptive trade practices, as pled against Mr. Reid and Spend Management Solutions, are so intertwined that should

Plaintiff prevail on these issues against Spend Management Solutions, then Mr. Reid could be collaterally estopped from arguing the merits of these claims in the bankruptcy action. Plaintiff can assert collateral estoppel in the bankruptcy action and impact Mr. Reid's ability to reorganize. In Royster, the debtor filed for bankruptcy after an order on the plaintiff's claim for fraud was entered. Floyd v. Royster (In re Royster), 408 B.R. 449, 450-451, 2009 Bankr. LEXIS 1785, *3-4. On the plaintiff's motion to deny the dischargeability of the judgment, the North Carolina Eastern Bankruptcy Court found that the debtor was collaterally estopped from re-litigating the issue of fraud, and Section 523(a)(2) of the Bankruptcy code – which provides that an individual debtor will not receive a discharge from any debt obtained by fraud – applied such that the prior judgment was not dischargeable in the bankruptcy proceeding. Id. at *8; *compare* In re Raynor, 922 F.2d 1146, 1148 (holding that the issues relevant to discharge were not actually litigated in the underlying action because "Raynor was not aware of the proceeding[, t]he court's findings of fact and conclusions of law supporting its judgment were prepared by [the creditor's] counsel[, and t]he record contain[ed] no transcript of the evidence or depositions.").

21. A similar outcome like in the Royster matter could occur in this matter should the stay not be extended to Spend Management Solutions. The issues in this case are such that should the trial proceed against Spend Management Solutions, Mr. Reid will be collaterally estopped from asserting that Plaintiff's fraud and civil conspiracy claims are without merit as he has had an opportunity to take part in these proceedings.

22. Further, because these issues are relevant to Mr. Reid, he will be required to spent time and resources on and be engaged in the Underlying Action, contrary to purpose of the

9

automatic stay. See Wolf Fin. Group, Inc., 1994 Bankr. LEXIS 2350, *19-20 (addressing the rationale for extending the stay to nondebtors includes avoiding the debtor expending estate assets and the time and energy to monitor and potentially participate in the litigation). Importantly, both claims include intent allegations which would impact any potential discharge under 11 USC § 523.

23. The allegations of Plaintiff's complaint against Spend Management Solutions, Mr. Reid, and his companies create the unusual circumstances which would allow for the stay to be extended to Spend Management Solutions. Accordingly, Spend Management Solutions requests an injunction staying the Underlying Action and for the stay to be extended to Spend Management Solutions.

**The Stay Should be Extended to Spend Management Solutions because of judicial economy and the hardship to Spend Management Solutions**

24. "The Fourth Circuit in Piccinin recognized four grounds, either statutory or equitable, on which a bankruptcy court may enjoin litigation against non-debtors. . . . They are: (1) the automatic stay under 11 U.S.C. § 362(a)(1); (2) the automatic stay under 11 U.S.C. § 362(a)(3); (3) the bankruptcy court's powers under 11 U.S.C. § 105; and (4) the bankruptcy court's general equity powers under its comprehensive jurisdiction conferred by 28 U.S.C. § 1334. . . . [E]ach [ground] require[s] a separate analysis." In re Brier Creek Corporate Ctr. Assocs. Ltd. P'ship, 2013 Bankr. LEXIS 143, *5, 2013 WL 144082 (citing A. H. Robins Co., 788 F.2d 994, 999-1004). When exercising the power to issue a stay, the court must "'weigh competing interests and maintain an even balance' and must justify the stay 'by clear and convincing circumstances outweighing potential harm to the party against whom it is operative.'" A.H. Robins Co., 788 F.2d 994, 1003. "The suppliant for a stay must make out a clear case of hardship or inequity in being required

10

to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." Williford v. Armstrong World Industries, Inc., 715 F.2d 124, 127. Because of the procedural posture of the Underlying Action, the prejudice to Spend Management Solutions should the trial to go forward without Mr. Reid (and likely the corporate entities owned by Mr. Reid who are co-defendants in the Underlying Action), and for judicial economy, the stay should be extended to Spend Management Solutions.

25. First, because the claims asserted by Plaintiff against Mr. Reid are stayed, there is little harm to Plaintiff. The vast majority of the claims asserted by Plaintiff, and the most significant portion of Plaintiff's damages, are against Mr. Reid and his companies. As stated above, Plaintiff has asserted claims against Mr. Reid and his companies for breach and contract and gross negligence stemming from the work done on the project. While there are direct claims against Spend Management Solutions, many of the causes of action against Spend Management Solutions only serve to bolster claims Plaintiff's against Mr. Reid and his companies and increase Plaintiff's potential recovery to include treble damages and the recovery of attorneys fees. Accordingly, extending the stay as to Spend Management Solutions would not cause any additional harm to Plaintiff given the impact on Plaintiff's claims already caused by the automatic stay issued to Mr. Reid.

26. Further, the Underlying Action is currently slated to be tried in the Mecklenburg Court Superior Court. Spend Management Solutions expects that Plaintiff will begin to present evidence beginning on September 25, 2018. By the time a hearing is held on this matter, it is possible that the jury would have heard evidence regarding claims solely related to Mr. Reid and his companies, related to construct defect and damages caused by Mr. Reid's alleged negligent construction.

27. Should the trial go forward, a verdict could be entered solely against Spend Management Solutions, which is tainted by the negative evidence admitted by Plaintiff against Mr. Reid and his companies, which will only served to prejudice Spend Management Solutions because of the automatic stay as to Mr. Reid (and the likely expected extension of the stay as to his companies). Essentially, should the jury be prejudiced by Plaintiff's evidence, particularly evidence of Mr. Reid and/or his companies' wrong doing, and Spend Management Solutions is the only party left standing at the time a verdict is reached, the prejudice to Spend Management Solutions would be immeasurable. Accordingly, because of the prejudice to Spend Management Solutions, the court should issue an injunction staying the Underlying Action and enter an order extending the stay to Spend Management Solutions.

28. Finally, judicial economy warrants that the Court issue an injunction staying the Underlying Action and the stay be extended to Spend Management Solutions. As stated above, a primary issue in the underlying action is the construction of the project, efforts to remediate alleged faulty work performed by Mr. Reid, and damages for delay in opening the new space. Plaintiff is required to establish the relatedness of these construction related damages, Plaintiff's overall damages, including recovery against Spend Management Solutions. As such, it is possible the Plaintiff will have to litigate the issue of construction defect and the related costs associated with the project in separate actions against Spend Management Solutions in state court, and again against Mr. Reid in bankruptcy court. The risk of duplicate litigation, and possibly inconsistent verdicts warrants the extension of the stay to Spend Management Solutions.

29. On the grounds of the inequity to Spend Management Solutions to continue to be the only

party to this action given the claims asserted by Plaintiff against Mr. Reid and his companies, the alleged interrelation between Spend Management Solutions and Mr. Reid and his companies, and the procedural posture of the underlying action, a stay of the Underlying Action is warranted. Accordingly, Spend Management Solutions requests that this Court issue an injunction staying the Underlying Action and issue an order extending the stay to Spend Management Solutions.

### **CONCLUSION AND PRAYER FOR RELIEF**

30. For the forgoing reasons, Spend Management Solutions requests that the Court issue an injunction staying the Underlying Action and exercise its discretion to extend a stay to Spend Management Solutions and for any relief the Court deems just and proper. Respectfully submitted this 25<u>th</u> day of September, 2018.

          SWIFT, CURRIE, McGHEE & HIERS, LLP

          */s/Gillian S. Crowl*
          Gillian S. Crowl
          North Carolina Bar No. 42227
          ***Attorneys for Spend Management Solutions, LLC***

The Peachtree – Suite 300
1355 Peachtree Street, NE
Atlanta, GA   30309
(404) 874-8800
(404) 888-6199 [Facsimile]